ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, CA 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com
adrian.barrio@gmlawyers.com

CONAL DOYLE, # 227554
STEPHEN BEKE, # 290972
DOYLE LAW
9401 Wilshire Blvd., Suite 608
Beverly Hills, CA 90212
Tel: (310) 385-0567; Fax (310) 943-1780
conal@conaldoylelaw.com
sbeke@conaldoylelaw.com

Attorneys for Plaintiffs
LACY ATZIN and MARK ANDERSEN,
on behalf of themselves and all others
similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LACY ATZIN; MARK ANDERSEN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ANTHEM, INC.; ANTHEM UM SERVICES, INC., <br><br> Defendants. | Case No.: 2:17-cv-6816 ODW (PLAx) <br> Assigned to Hon.: OTIS D. WRIGHT, II <br><br> **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT** <br><br> **Date: November 22, 2021** <br> **Time: 1:30 p.m.** <br> **Place: Courtroom 5D** |

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 22, 2021 at 1:30 p.m. in Courtroom 5D of the above-entitled court, located at 350 West 1st Street, Los Angeles, California 90012, Plaintiffs Lacy Atzin and Mark Andersen will move the Court for an order:

1.      Certifying the Atzin (Knee) Class, appointing Lacy Atzin as class representative, and appointing Gianelli & Morris and Doyle Law, APC as class counsel ("Class Counsel");

2.      Preliminarily approving the proposed settlement of the Atzin Knee Class and Andersen (Foot-Ankle) Class (collectively referred to as the "Class"), attached as Exhibit 1 to the Declaration of Robert S. Gianelli, submitted herewith;

3.      Approving issuance of notice to the Class; and

4.      Setting a hearing for final approval of the settlement and the motion by Plaintiffs and Class Counsel for an award of attorneys' fees and expenses and an incentive awards for the class representatives Lacy Atzin and Mark Andersen.

This motion is based on this notice, the attached memorandum of points and authorities, the Declaration of Robert S. Gianelli and, the attached settlement agreement and exhibits thereto, the declarations of John Michael, C.P.O. and Scott Hicks, the Court's files and records in this action, and upon such other evidence and argument as may be presented at the hearing.


DATED: October 20, 2021                          GIANELLI & MORRIS


                                                 By:   /s/ Joshua S. Davis
                                                       ROBERT S. GIANELLI
                                                       JOSHUA S. DAVIS
                                                       ADRIAN J. BARRIO
                                                       Attorneys for Plaintiffs

# <u>TABLE OF CONTENTS</u>

*Page*

MEMORANDUM OF POINTS AND AUTHORITIES……………………………1

I.  INTRODUCTION……………………………………………………………1

II.  SUMMARY OF LITIGATION……………………………………………3

    A.  Relevant Procedural History……………………………………3

    B.  Investigation and extent of discovery completed…………………5

    C.  Negotiation of the Settlement…………………………………6

III.  THE PROPOSED SETTLEMENT………………………………………6

    A.  Relief for class members………………………………………6

        1.  Anthem agreed to appropriate medical necessity criteria for microprocessor-controlled knee prostheses……………………6

        2.  Anthem agreed to cover microprocessor-controlled foot-ankle Prostheses…………………………………………………7

        3.  Reprocessing……………………………………………8

    B.  Released claims…………………………………………………9

    C.  Notice…………………………………………………………9

    D.  Attorneys' fees…………………………………………………9

IV.  ARGUMENT…………………………………………………………10

    A.  The Class meets the requirements of Rule 23………………………...10

        1.  Rule 23(a) requirements………………………………………...11

            a.  Numerosity……………………………………………11

            b.  Commonality……………………………………………12

            c.  Typicality………………………………………………...13

            d.  Adequacy………………………………………………14

        2.  Rule 23(b)………………………………………………………...15

            a.  Rule 23(b)(1)………………………………………………15

# <u>TABLE OF CONTENTS</u>

*Page*

      b.     Rule 23(b)(2)……………………………………………16

   B.       The proposed settlement of the Class warrants preliminary approval……..……………………………………..………16

     1.   The settlement is the product of good faith, informed, arm's-length negotiations between experienced counsel………18

     2.   The settlement obtains the relief sought by the class demonstrating beyond question that the Settlement is within the range of reasonableness………………………………..19

     3.   No preferential treatment for the class representative………….19

     4.   The views of experienced counsel……………………………...20

V.    PROPOSED SCHEDULE…………………………………………………...20

VI.   CONCLUSION…………………………………………………………………21

# **<u>TABLE OF AUTHORITIES</u>**

***<u>Cases</u>***                                                                                       ***Page(s)***

*Armstrong v. Davis*,
     275 F.3d 849 (9th Cir. 2001)……………………………………………...13

*Baby Neal for and by Kanter v. Casey*,
     43 F.3d 48 (3d Cir. 1994)…………………………………………………16

*Bublitz v. E.I. Du Pont de Nemours and Co.*,
     202 F.R.D. 251 (S.D. Iowa 2001)………………………………………...12

*Class Plaintiffs v. City of Seattle*,
     955 F.2d 1268 (9th Cir. 1992)…………………………………….....16

*Comcast Corp. v. Behrend*,
     569 U.S. 27 (2013)…………………………………………………...11

*Des Roches v. California Physicians Service*,
     320 F.R.D. 486 (N.D. Cal. 2017)…………………………………………11,12

*Escalante v. California Physicians' Service*,
     309 F.R.D. 612 (C.D. Cal. 2015)…………………………………....12-15

*Gen. Tel. Co. of Southwest v. Falcon*,
     457 U.S. 147 (1982)…………………………………………………....14

*Hanlon v. Chrysler Corp.*,
     150 F.3d 1011 (9th Cir. 1998)……………………………………….17

*Horn v. Wholesale Grocers, Inc.*,
     555 F.2d 270 (10th Cir. 1977)………………………………………12

*In re Tableware Antitrust* Litig.,
     484 F.Supp.2d 1078 (N.D.Cal.2007)…………………………..…….18

*Jackson v. Danberg*,
     240 F.R.D. 145 (D. Del. 2007)…………………………………………12

*Johnson v. California*,
     543 U.S. 499 (2005)……………………………………………………13

# <u>TABLE OF AUTHORITIES</u>

***<u>Cases</u>***                                                                                              ***Page(s)***

*Martial v. Coronet Ins. Co.*,
    880 F.2d 954 (7th Cir. 1989)…………………………………..…11,12

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012)……………………………………12,13

*McMillon v. State of Hawaii*,
    261 F.R.D. 536 (D. Haw. 2009)………………………….…….12

*Moeller v. Taco Bell Corporation*,
    220 F.R.D. 604 (N.D. Cal. 2004)…………………………..…..11

*Monterrubio v. Best Buy Stores, L.P.*,
    291 F.R.D. 443 (E.D. Cal. 2013)…………………………….11

*Officers for Justice v. Civil Serv. Comm'n.*,
    688 F.2d 615 (9th Cir. 1982)…………………………………....2,17

*Otey v. CrowdFlower, Inc.*,
    2014 WL 1477630 (N.D. Cal. 2014)……………………….…….18

*Parra v. Bashas', Inc.*,
    536 F.3d 975 (9th Cir. 2008)………………………………...12

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014)……………………………….12,16

*Saffle v. Sierra Pacific Power Co. Bargaining Unit
Long Term Disability Income Plan*,
    85 F.3d 455 (9th Cir. 1996)……………………………………11

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)………………………………...14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)……………………………………………11

# **TABLE OF AUTHORITIES**

***Cases***   ***Page(s)***

*Weinberger v. Thornton*,
  114 F.R.D. 599 (S.D. Cal. 1986)……………………………………..……13

*Weiss v. New York Hospital*,
  745 F.2d 786 (3d Cir. 1984)………………………………………………12

*Wit v. United Behavioral Health*,
  317 F.R.D. 106 (N.D. Cal. 2016)…………………………………………11

*Z.D. ex rel. J.D. v. Group Health Cooperative*,
  2012 WL 1977962 (W.D. Wash. June 1, 2012)……………………..……15

*Zinser v. Accufix Research Institute, Inc.*,
  253 F.3d 1180 (9th Cir. 2001)……………………………………………15

## ***Statutes***

Code of Federal Regulations
  Title 29
   § 2560.503-1……………………………………..……………15

Federal Rules of Civil Procedure
  Rule 23………………………………………………………….…*Passim*

United State Code
  Title 29
   § 1132……………………………………………………………3

## ***Treatises***

*Manual for Complex Litigation*
  (4th ed. 2004) § 21.632…………………………..…………………..2,17

*Newberg on Class Actions*
  § 13.13 (5th ed. 2016)…………………………………………………2,17

v

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case concerns the practice of Defendants Anthem, Inc. and Anthem UM Services, Inc. (jointly, "Anthem" or "Defendants") to deny coverage for microprocessor controlled lower limb prostheses for persons with lower limb loss. With respect to microprocessor-controlled knee prostheses, Anthem used erroneous criteria to deny most requests as not "medically necessary." In regard to microprocessor-controlled foot-ankle prostheses, Anthem denied coverage for all such devices as investigational and not "medically necessary." Plaintiffs Lacy Atzin ("Atzin") and Mark Andersen ("Andersen") (collectively "Plaintiffs") and Anthem have agreed to settle this case on the terms set forth in the Settlement Agreement ("the Settlement")[1] attached as Exhibit 1 to the Declaration of Robert S. Gianelli ("Gianelli Decl."), filed herewith.

The Settlement followed major policy changes from Anthem directly resulting from this litigation. About two years after this action was first filed, on October 3, 2019, the parties reached a settlement of the knee portion of the case. With input from Plaintiffs' experts, Anthem adopted appropriate medical necessity criteria. Anthem agreed to cover microprocessor knees if the member demonstrated through their provider a reasonable likelihood of better mobility or stability, and showed their need for the device through regular home or office use. The parties, however, were unable to reach a settlement of the foot-ankle portion of the lawsuit at that time.

This Court certified the Anderson (Foot-Ankle) Class on May 6, 2020, appointing Andersen as the class representative and Gianelli & Morris and Conal Doyle as class counsel (collectively referred to herein as "Class Counsel"). Finally, about four years after this action was filed, Anthem agreed to change its "investigational" coverage position with respect to microprocessor-controlled foot-

---

[1] Unless otherwise indicated, all defined terms will have the same definitions as those set forth in the Settlement.

ankle prosthetic devices. With input by Plaintiffs' experts, Anthem has now adopted appropriate medical necessity criteria for both microprocessor knee and foot-ankle prosthetic devices.

Plaintiffs respectfully request the Court preliminarily approve the Settlement, which provides substantially all of the relief requested in the Complaint. At the preliminary approval stage, the Court makes only a preliminary determination of the Settlement's fairness, reasonableness, and adequacy so that notice of the Settlement may be given to the class and a fairness hearing may be scheduled to make a final determination about the Settlement's fairness. *Newberg on Class Actions*, § 13:12 (5th ed. 2016); *Manual for Complex Litigation* (4th ed. 2004) § 21.632. In so doing, the Court simply reviews the Settlement to determine that it is not collusive and, taken as a whole, is fair, reasonable, and adequate to all concerned. *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982).

The Settlement easily meets this standard. It is the product of extensive, arm's-length negotiations between the parties, and will fairly resolve this case. Indeed, the Settlement achieves substantially all of the relief sought in the Complaint so a victory at trial for the class would provide no additional benefit.

Plaintiffs therefore respectfully request that the Court certify the Atzin (Knee) Class, appoint Atzin as its class representative, appoint Gianelli & Morris and Doyle Law, APC as Class Counsel, preliminarily approve the proposed settlement of the Atzin Knee Class and Andersen (Foot-Ankle) Class (collectively referred to as the "Class"); Approve issuance of notice to the Class; and set a hearing for final approval of the Settlement and the motion by Plaintiffs and Class Counsel for an award of attorneys' fees and expenses, and incentive awards for the class representatives.

## II.    SUMMARY OF LITIGATION

### A.    Relevant procedural history.

On September 15, 2017, Plaintiffs filed this ERISA class action case against Anthem seeking declaratory and injunctive relief on behalf of the class pursuant to

29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3) and individual claims for benefits under 29 U.S.C. § 1132(a)(1)(B). (Dkt. 1.)

The Complaint alleged that Anthem developed and used an internal coverage guideline, the Anthem Medical Policy on Microprocessor Controlled limb Prosthesis, Policy No. OR-PR.00003 (the "Former Medical Policy") to deny claims for microprocessor controlled lower limb prostheses. With respect to microprocessor-controlled knee prostheses, Anthem used erroneous criteria in the Former Medical Policy to deny claims as not medically necessary. More specifically, Anthem deemed requests for these procedures not "medically necessary and not covered unless all of the following criteria were met:

> 1. Individual has adequate cardiovascular reserve and cognitive learning ability to master the higher level technology and to allow for faster than normal walking speed; **and**
>
> 2. Individual has demonstrated the ability to ambulate faster than their baseline rate using a standard swing and stance lower extremity prosthesis; **and**
>
> 3. Individual has a documented need for daily long distance ambulation (for example, greater than 400 yards) at variable rates. (In other words, use within the home or for basic community ambulation is not sufficient to justify the computerized limb over standard limb applications)**; and**
>
> 4. Individual has a demonstrated need for regular ambulation on uneven terrain or regular use on stairs. Use of limb for limited stair climbing in the home or place of employment is not sufficient to justify the computerized limb over standard limb applications.

(Dkt. 1, ¶ 21; Former Medical Policy attached as Exhibit 2 to Gianelli Decl.)

Plaintiffs alleged that these criteria were erroneous because criteria 1 and 2 were predicated on a person with a prosthetic leg demonstrating the ability to master "a faster than normal walking speed" and doing it with a "standard swing and stance" device. (*Id.*, ¶ 22.) While a microprocessor-controlled knee prosthesis may allow a person to walk faster, Plaintiffs alleged this was only one of the benefits of the device, and failed to recognize that they also allowed people to accomplish "normal" activities of daily living. (*Id.*) For instance, a microprocessor controlled knee creates better stability and therefore reduces the incidence of stumbles and falls

3

in everyday settings, including their homes. (*Id.*) Plaintiffs alleged that criteria 3 and 4 imposed unreasonable distance requirements and demands regarding "regular" use of uneven terrain or stairs while excluding the use of home or workplace stairs. (*Id.*)

With respect to microprocessor-controlled foot-ankle prostheses, pursuant to the Medical Policy, Anthem categorically denied all such devices as investigational and not medically necessary. (Dkt. 1, ¶ 3.)

Anthem denied Atzin's request for a microprocessor-controlled knee prosthetic device as not medically necessary because she did not meet the erroneous criteria of the Former Medical Policy. (*Id.*, ¶¶ 26-31). Defendants denied Andersen's request for a microprocessor-controlled foot-ankle prosthetic device as investigational pursuant to the Former Medical Policy. (*Id.*, ¶¶ 32-36.)

The primary relief requested by Plaintiffs was an injunction requiring Defendants to reevaluate and reprocess Plaintiffs and class members' requests without the erroneous denial bases under appropriate and valid medical necessity criteria. (*Id.* at ¶ 48.) (*Id.*)

On October 3, 2019, the Parties entered into a stipulated settlement of that part of the case addressing Anthem's criteria for approving claims for microprocessor-controlled-knee prostheses, subject to a long-form agreement and approval by the Court. (Dkt. 53.)

In regard to the portion of the case addressing microprocessor-controlled foot-ankle prosthesis, on May 6, 2020, the Court granted Plaintiffs' motion for class certification, and certified the following foot-ankle class and appointed Mark Andersen as class representative:

> "All persons covered under Anthem plans governed by ERISA, self-
> funded or fully-insure, whose requests for microprocessor controlled
> foot-ankle prostheses have been denied during the applicable statute
> of limitations period pursuant to Anthem's Medical Policy on

1   Microprocessor Controlled Lower Limb Prosthesis, Policy No. OR-

2   PR.00003."  (Dkt. 63 at 9.)

3  The Court appointed Gianelli & Morris and Doyle Law, APC as Class Counsel. (*Id*.)

4   On August 5, 2021, the Parties notified the Court that they had reached a

5  settlement in principle as to the foot-ankle class. (Dkt. 92.)

6   **B.   Investigation and extent of discovery completed.**

7   The parties' settlement occurred over nearly 4 years after this action was filed

8  and was well informed by the discovery and investigation completed up to that point.

9  (Gianelli Decl., ¶ 23.) At the time of settlement, Anthem had produced over 2,282

10  pages of information concerning the class and merits issues in the case. (*Id*.) For their

11  part, Plaintiffs produced nearly 1,000 pages of information supportive of their

12  position that Anthem's policies and practices are amenable to class treatment,

13  regarding proper criteria for microprocessor-controlled knee prostheses, and that

14  microprocessor foot-ankle prostheses are safe and effective. (*Id*.)

15   All told, Plaintiffs served and Anthem responded to 34 document requests, 25

16  interrogatories, and numerous requests for admission. Discovery was hard fought and

17  contested. (Gianelli Decl*.,* ¶ 24.) Plaintiffs brought three motions to compel, which

18  were granted in part on January 13, 2021. (Dkt. 87.)

19   Plaintiffs also took the deposition of Anthem's corporate designee ("Person

20  Most Knowledgeable") to address merits issues relating to the safety and

21  effectiveness of foot-ankle prostheses. (Gianelli Decl*.,* ¶ 25.)

22   Class Counsel supplemented formal discovery with their own investigation and

23  research. (Gianelli Decl*.,* ¶ 26.) Class Counsel engaged in extensive investigation and

24  research regarding appropriate medical necessity criteria for microprocessor-

25  controlled lower limb prostheses, and the safety and effectiveness of microprocessor-

26  controlled foot-ankle prostheses. Class Counsel also retained and worked with

27  experts on microprocessor-controlled prosthetics and the pertinent body of medical

28  literature. (*Id*.)

5

**C.     Negotiation of the Settlement.**

The parties' attempts to settle this case began in short order after this case was filed, entailed the robust exchange of information (including expert information), and spanned the four-years length of the case. (Gianelli Decl*.*, ¶ 27.) As indicated above, the parties reached a settlement of the knee portion of this case on October 3, 2019, but were unable to reach a settlement of foot-ankle portion. (*Id*.) Plaintiffs subsequently filed an unopposed motion for class certification, which was granted by this Court in regard to the foot-ankle class. (*Id*.) The parties then proceeded to merits discovery before restarting their settlement efforts in March 2021. (*Id*.) The parties engaged in extensive and vigorous settlement negotiations over the next six months until they reached a settlement in principle on August 5, 2021. (*Id*.) The remaining outstanding issues, and the long form settlement agreement, have now been finalized. (*See* Ex. 1 to Gianelli Decl.; Gianelli Decl., ¶ 27.)

The informed view of experienced class counsel is that the proposed settlement is fair, reasonable, and adequate and easily meets the criteria for preliminary approval. (Gianelli Decl., ¶ 28.) The Settlement achieves substantially all of the relief requested in the Complaint, and trial would afford no further benefit. (*Id*.)

**III.    THE PROPOSED SETTLEMENT**

**A.     Relief for class members.**

**1.     Anthem agreed to appropriate medical necessity criteria for microprocessor-controlled knee prostheses.**

Effective August 28, 2019, Anthem agreed to revised medically necessity criteria. The new policy removed the erroneous speed requirement that was in the Former Medical Policy criteria 1 and 2. Instead, it provided that a person could qualify by simply having their provider attest that there was a reasonable likelihood of better mobility or stability with the microprocessor. Criteria 4 revised the distance requirement so that if a person could show the need for the microprocessor device

through regular daily use home or office use, they did not also need to meet the distance requirement. (John Michael Decl., ¶ 17.) A copy of the August 28, 2019 policy hereinafter referred as the "Revised Former Medical Policy" is attached as Exhibit E to the Settlement..

### 2. Anthem agreed to cover microprocessor-controlled foot-ankle Prostheses.

Effective May 20, 2021, Anthem to cover both microprocessor-controlled knee and foot-ankle prostheses using substantially the same medical necessity criteria. The Current Medical Policy provides, in pertinent part, that that use of microprocessor controlled knee and foot-ankle devices is medically necessary when the following criteria are met:

"1.    Individual has adequate cardiovascular reserve and cognitive learning ability to master the higher level technology; **and**

2.    Individual has a functional K-Level 3 or above; **and**

3.    The provider has documented that there is a reasonable likelihood of better mobility or stability with the device instead of a mechanical [knee or foot-ankle] prosthesis; **and**

4.    There is documented need for ambulation in situations where the device will provide benefit (for example, regular need to ascend/descend stairs, traverse uneven surfaces or ambulate for long distances [generally 400 yards or greater cumulatively]).

(Ex. F to the Settlement Agreement at p. 1.)

Class Counsel vetted the medical criteria in the Revised Former Medical Policy and Current Medical Policy with John Michael, C.P.O., a nationally-renowned prosthetist and Plaintiffs' expert in this case. (Gianelli Decl., ¶ 16.) As set forth in his concurrently filed declaration, Mr. Michael's opinion is that the criteria are reasonable to determine medical necessity of microprocessor lower limb prostheses. (Michael Decl., ¶¶ 15-20.)

Anthem has agreed not to change its position unless such change is warranted by a change in the medical literature and medical community's views. (Ex. 1 at ¶ 17.) A copy of the Current Medical Policy is attached as Exhibit F to the Settlement.

### 3. Reprocessing.

Class members who paid out of pocket for microprocessor-controlled knees and foot-ankle prostheses can make claims for reimbursement to the extent those out-of-pocket payments have not been paid by other insurance, Medicare, or other reimbursement sources for which the class member owes no reimbursement obligation. (Ex. 1 at ¶¶ 18-19.) If Anthem determines that the claim for reimbursement satisfies the medical necessity criteria in the Current Medical Policy, Anthem will reimburse the class members for the out-of-pocket expenses, subject to a reduction only for the cost-share the class member would have paid under the class member's contract with Anthem had that claim been initially approved as an in-network service. (*Id.* at ¶ 20.)

Class members who have not yet paid out-of-pocket for microprocessor-controlled knee or foot-ankle prostheses, and are currently covered by Anthem, can submit a new request for device pursuant to the terms of their existing Anthem health plan. (Ex. 1 at ¶ 21.) And while Class Members who have not yet paid out of pocket for microprocessor controlled knee or foot-ankle prostheses, and are no longer covered by Anthem, cannot submit a new request, they release no claims and are free to make a claim with any health plan they now have or will have in the future, including Anthem. (*Id.* at ¶ 22.)

All claim reimbursement determinations shall be made within 90 days. (Ex. 1 at ¶ 20.) If Anthem denies a claim for reimbursement under the Current Medical Policy, Anthem will comply with the adverse benefit determination and appeal provisions of ERISA. (*Id.*)

### B. Released claims.

The Settlement's release of claims provision bars the assertion, by any class member, of any and all claims against Anthem regarding "(1) any denial of microprocessor-controlled knee prostheses under ERISA-governed plans"; and "(2) any denial of microprocessor-controlled foot-ankle prostheses under ERISA-

governed plans"; and/or "(3) the appropriateness of Former Medical Policy, the Revised Former Medical Policy; and/or the Current Medical Policy, including, but not limited to the criteria in those policies." (Ex. 1 at ¶ 13(q).) Released claims do not include any claims for reimbursement or claims for re-review that are denied after final approval for failure to meet the Current Medical Policy criteria. (*Id.*) Released claims also do not include any claim by a class member who did not pay out-of-pocket for a microprocessor-controlled knee or foot-ankle prosthesis as of the date of the filing of this Motion, and is currently not covered by Anthem. (*Id.*)

### C.    Notice.

The Parties agree that no later than forty-five (45) days after entry of the preliminary approval order, a settlement administrator will mail notice of the proposed settlement to all class members as identified from Anthem's data search. (Ex. 1 at ¶ 29.)

### D.    Attorneys' fees.

If the Court preliminarily approves the Settlement, Class Counsel will move for an award of attorneys' fees and costs. The Settlement provides that Class Counsel will ask the Court for attorneys' fees up to $850,000.00 and expenses up to $36,833.99. (Ex. 1 at ¶ 25.) The class representatives will also each apply for an incentive award in the amount of $15,000 for their work as class representatives in this case. (*Id.*)

## IV.    ARGUMENT

### A.    The Class meets the requirements of Rule 23.

The Settlement provides relief to the "Class" which is defined as the persons in the "Atzin *(*Knee) class" and the "Andersen (Foot-Ankle) Class. The "Atzin (Knee) Class" is defined as:

> "[A]ll persons covered under Anthem plans governed by ERISA, self-funded or fully insured, whose request(s) for microprocessor controlled knee prostheses have been denied during the applicable statute of

limitations period pursuant to Anthem's Former Medical Policy on Microprocessor Controlled Lower Limb Prosthesis, Policy No. OR-PR.00003, who are mailed the [Notice of the Proposed Settlement of Class Action and Final Approval Hearing], and who do not properly exclude themselves from the Atzin knee Class under Paragraphs 34-38 [of the Settlement Agreement]."

Ex. 1 at ¶ 13(c). The "Andersen (Foot-Ankle) Class" is defined as:

"[A]ll persons covered under Anthem plans governed by ERISA, self-funded or fully insured, whose request(s) for microprocessor controlled foot-ankle prostheses have been denied during the applicable statute of limitations period pursuant to Anthem's Former Medical Policy on Microprocessor Controlled Lower Limb Prosthesis, Policy No. OR-PR.00003, who are mailed the [Notice of the Proposed Settlement of Class Action and Final Approval Hearing] and who do not properly exclude themselves from the Andersen (Knee) Class under Paragraphs 34-38 [of the Settlement Agreement]."

(Ex. 1 at ¶ 13(d).)

To maintain a class action under Rule 23, the requirements of Rule 23(a) must first be established. Under Rule 23(a), a class may be certified if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). In addition to the Rule 23(a) requirements, at least one of the three subsections of Rule 23(b) must be met. The caveat is that, "[in] the context of a settlement, … considerations regarding management of the class action are irrelevant because the proposal to the court is to avoid trial through a settlement agreement." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 452 (E.D. Cal. 2013).

This Court previously certified the foot-ankle class under Rules 23(b)(1) and 23(b)(2). (Dkt. 63.) Thus, this Court has already performed the "rigorous analysis" required by Rule 23 as to the Andersen (Foot-Ankle) Class. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

The Court should also certify for settlement purposes the Atzin (Knee) Class under Rule 23(b)(1) and Rule 23(b)(2),[2] and appoint Atzin as a Class Representative.

### 1. Rule 23(a) requirements.

#### a. Numerosity.

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. *Moeller v. Taco Bell Corporation*, 220 F.R.D. 604, 608 (N.D. Cal. 2004). Plaintiffs are not required to identify each and every potential member of the class or specify the exact number of potential class members. *Martial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). Instead, plaintiffs need only provide a properly supported estimate. *Id.*

Following a diligent search of its data systems, Anthem reports that there are at least 101 persons in the Atzin (Knee) Class. (Declaration of Scott Hicks, ¶ 5.) This estimate easily meets the numerosity threshold for an injunctive relief class. *Escalante v. California Physicians' Service*, 309 F.R.D. 612, 618 (C.D. Cal. 2015)

---

[2] Certification is not being sought under Rule 23(b)(3) because no class member is "*entitled* to an individualized award of monetary damages" under the terms of the proposed settlement agreement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011). Instead, United will reimburse the class member for the out-of-pocket expenses up to a maximum of $45,000 *if* United determines that the claim for reimbursement satisfies the criteria for the surgery under its current guideline. Thus, any monetary relief obtained by the class members is entirely conditional and incidental to the primary relief of claim reprocessing. *See Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460-461 (9th Cir. 1996) ("[R]emand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination."); *Des Roches v. California Physicians' Service*, 320 F.R.D. 486, 508 (N.D. Cal. 2017) (in certifying ERISA class under FRCP 23(b)(2) held that under *Saffle*, the appropriate "final" remedy for class members with denied claims was to require insurer to reprocess benefit denials under revised guidelines); *Wit v. United Behavioral Health*, 317 F.R.D. 106, 136-136 (N.D. Cal. 2016) (in certifying ERISA class under FRCP 23(b)(2) held injunctive relief that required defendant to re-process previously denied requests under a correct standard was appropriate relief).

(numerosity satisfied "even presuming a class of 19" due to the nature of relief sought). *See also Weiss v. New York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984); *Horn v. Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977); *McMillon v. State of Hawaii,* 261 F.R.D. 536, 543 (D. Haw. 2009) (finding the numerosity requirement satisfied where the putative class consisted of 10 identifiable members, as well as future, unidentified members); *Jackson v. Danberg*, 240 F.R.D. 145, 147 (D. Del. 2007) (16 members enough); *Bublitz v. E.I. Du Pont de Nemours and Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001) (17 members enough).

### b.  Commonality.

Rule 23(a)(2) requires that there be questions of law or fact that are common to the class. Rule 23 does not require that all questions of law and fact be common to all class members. *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008). In fact, only one question of law or fact must be common to the proposed class. *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

Here, the propriety of Anthem's denials of microprocessor-controlled knee prostheses based on improper criteria contained in the Former Medical Policy is unquestionably a common issue. In *Des Roches v. California Physicians Service*, 320 F.R.D. 486, 497-500 (N.D. Cal. 2017), the court addressed a health plan's use of written coverage guidelines that used criteria that did not confirm to generally accepted standards, and held that commonality was satisfied.  The *Des Roche's* court's language and reasoning is fully applicable here:

> [T]he Court can evaluate 'in one stroke' whether the Guidelines comport with generally accepted standards for medical necessity, and if they do not, the Court can order Defendants to reevaluate all claims under the proper standard."

*Id.* at 498.

Atzin is challenging Anthem's denial of microprocessor-controlled knee prostheses using erroneous criteria in the Former Medical Policy. Whether the Former Guidelines contained erroneous criteria is a common question that is "apt to drive resolution of the litigation." *Mazza*, 666 F.3d at 589. Thus, the commonality element is satisfied.

### c.   Typicality.

Rule 23(a)(4) requires that the claims of the named plaintiff be typical of those of the class. The purpose of the typicality requirement is to "assure[ ] that the interest of the named representatives align with those of the class." *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986). Where, as here, "the challenged conduct is a policy or practice that affects all class members," the Ninth Circuit does "not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 868-869 (9th Cir. 2001)*, abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-505 (2005).

In this case, "the injuries [of the class members] are identical." *Armstrong*, *supra*, 275 F.3d at 869. Atzin and all the proposed Atzin (Knee) Class Members have suffered "the same or similar injury." They have been denied coverage for microprocessor-controlled knee prosthetic devices pursuant to the Former Medical Policy. *Escalante*, *supra*, 309 F.R.D. at 619. This common injury springs from the same "uniform course of conduct," namely, Anthem's use of erroneous criteria to determine whether a microprocessor-controlled knee prostheses is medically necessary. The typicality requirement is therefore satisfied.

### d.   Adequacy.

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. This prerequisite is primarily concerned with "the competency of class counsel and conflicts of interest." *Escalante*, *supra*, 309 F.R.D.

at 619 (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n. 13 (1982). Resolution of two questions determines whether this requirement is met: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Escalante*, *supra*, 309 F.R.D. at 619. *See also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

As set forth above, Atzin's interests are co-extensive and do not conflict with the proposed Atzin (Knee) Class Members' interests, and are typical of the claims of the other class members. Atzin has an interest in vigorously prosecuting this case on behalf of the proposed class because she seeks coverage for a microprocessor-controlled knee device. This explicitly advances the interests of the proposed class.

Likewise, Class Counsel will vigorously prosecute this action on behalf of the class. Class Counsel has significant experience in insurance litigation and class litigation. (Gianelli Decl., ¶¶ 2-5.) Gianelli & Morris has successfully prosecuted numerous insurance class actions including class actions against health plans. (*Id.* at ¶ 3.) Co-counsel Conal Doyle of Doyle Law has successfully prosecuted a number of individual cases over wrongful denials of prosthetic devices and recently acted as co-counsel with Gianelli & Morris in *Trujillo, et al. v. UnitedHealth Group Inc., et al.* (C.D. Cal.), No. 5:17-cv-2547-JFW (KKx), where the court certified a class of persons who were denied prosthetic devices. (Gianelli Decl., ¶ 29.) This Court has already held that Class Counsel were adequate to represent the Andersen (Knee) Class. (Dkt. 63 at p. 7.)

### 2.   Rule 23(b).

The next determination is whether this case fits one of the three subsections of Rule 23(b). The two subsections at issue are subsections (b)(1) and (b)(2).

### a.   Rule 23(b)(1).

Rule 23(b)(1) is divided into two subsections, Rule 23(b)(1)(A) and 23(b)(1)(B). Certification is proper herein under both subsections.

A class action is maintainable under Rule 23(b)(1)(A) if "prosecution of separate actions … would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." As explained in *Escalante*, "[t]his subsection covers actions where the party is obliged by law to treat the members of the class alike or where the party must treat all alike as a matter of practical necessity." *Escalante*, *supra*, 309 F.R.D. at 619-620 (internal quotations omitted). *See also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) (the phrase "incompatible standards of conduct" refers to the situation where "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct").

Certification is also proper pursuant to Rule 23(b)(1)(B), which requires a showing that "adjudications with respect to individual class members … would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B). ERISA requires that, where appropriate, plan provisions must be "applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5). If this Court were to find that the terms of Anthem's EOCs required Anthem "to act in a certain fashion, ERISA would require [Anthem] to act in a similar fashion toward all beneficiaries—the quintessential (b)(1)(B) scenario." *Z.D. ex rel. J.D. v. Group Health Cooperative*, 2012 WL 1977962 at *7 (W.D. Wash. June 1, 2012).

### b.    Rule 23(b)(2).

A class is proper under Rule 23(b)(2) if the party opposing the class has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole …" Fed.R.Civ. P. 23(b)(2). The key to certification under Rule 23(b)(2) is establishing uniform, class-wide conduct on the part of the defendant. *Parsons*,

*supra*, 754 F.3d at 688. This requirement is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class a whole." *Id*.; *See also Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). "That inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Parsons*, *supra*, 754 F.3d at 688.

In this case, Atzin and the Atzin (Knee) Class Members are all seeking declaratory and injunctive relief to remedy the same conduct on the part of Anthem: Anthem's uniform practice of improperly denying requests and/or claims for microprocessor-controlled knee prostheses using improper medical necessity criteria.

The elements of Rule 23 are met for the Atzin (Knee) Class. The Court should approve the Atzin Knee Class for settlement purposes, appoint Atzin as a class representative, and Gianelli & Morris and Conal Doyle APC as Class Counsel.

**B.    The proposed settlement of the Class warrants preliminary approval.**

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). The settlement of a certified class action must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2).

Courts employ a two-step process in approving settlements under Rule 23(e). A settlement is preliminarily approved for the purpose of providing notice to class members and setting a final approval hearing date to make a final determination about the settlement's fairness. At the final approval hearing the court grants or denies final settlement approval after assessing the settlement's reasonableness and any objections raised. *Manual for Complex Litigation, supra,* § 21.632.

The preliminary approval step requires the Court to "make a preliminary

16

determination on the fairness, reasonableness, and adequacy of the settlement terms . . . ." *Manual for Complex Litigation, supra,* § 21.632. At this preliminary-approval step, the Court must conduct a prima facie review of the relief provided by the settlement and the proposed notice to determine that notice should be sent to the Settlement class members. *Newberg on Class Actions*, § 13.13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to the class members and [to] hold a full-scale hearing as to its fairness.")

Preliminary approval of a settlement should be granted if the proposed settlement falls within the range of what could be found "fair, adequate and reasonable" so that notice may be given to the proposed class and a hearing for final approval can be scheduled. *Officers for Justice*, *supra*, 688 F.2d at 625. The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 625; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). This is a minimal threshold:

> Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *In re Tableware Antitrust* Litig., 484 F.Supp.2d 1078, 1079 (N.D.Cal.2007) (citation omitted).

*Otey v. CrowdFlower, Inc.*, 2014 WL 1477630, *10 (N.D. Cal. 2014).

Here, the proposed Settlement satisfies the standard for preliminary approval, as there is no question that it was negotiated in good faith and presents a fair, reasonable, and adequate resolution for the Class.

17

1.    **The settlement is the product of good faith, informed, arm's-length negotiations between experienced counsel.**

Atzin and Andersen are represented by counsel who have extensive experience in the litigation of insurance class actions and have successfully prosecuted other class actions over policyholders' rights to health benefits. (Gianelli Decl. at ¶¶ 2-4; 29) Anthem's counsel is a firm that has expertise in health care matters and that regularly represents Anthem and other health plans.

In addition to participating in formal discovery, Class Counsel engaged in extensive investigation regarding appropriate medical necessity criteria for microprocessor knee and foot-ankle devices, Anthem's basis for refusing to cover at all microprocessor foot-ankle devices. Class Counsel also engaged in extensive investigation and research regarding the safety and effectiveness of microprocessor foot-ankle devices, and consulted with experts on microprocessor prosthetic devices, and the corresponding body of medical literature. (Gianelli Decl., ¶¶ 16, 23-26.)

The parties engaged in intense negotiations through their counsel for four years that were at arms'-length and, ultimately, resulted in a settlement that provides the relief requested in the Complaint. (*Id.*, ¶¶ 27.) Accordingly, the settlement reached in this matter represents the end-result of an adversarial process where the interests of the Class were vigorously and fully represented by Class Counsel.

2.    **The settlement obtains the relief sought by the class demonstrating beyond question that the settlement is within the range of reasonableness.**

This case was brought because Anthem denied requests for microprocessor-controlled knees pursuant to erroneous medical necessity criteria, and denied all requests for microprocessor controlled foot-ankle devices as investigational. This case sought an injunction requiring Anthem to provide notice to members who have had requests for microprocessor knees and foot-ankle prostheses denied, to re-review

the denied claims under the proper standard, and make payment where appropriate. (Dkt. 1 at ¶ 60.)

The proposed Settlement effectively provides the relief requested. All class members who have paid out-of-pocket for microprocessor controlled knee or foot-ankle prosthetics, can make claims for reimbursement to the extent those out-of-pocket payments have not been paid by other insurance, Medicare, or other reimbursement sources for which the class member owes no reimbursement obligation. If Anthem determines that the claim for reimbursement satisfies the criteria under its Current Medical Policy, Anthem will reimburse the class member for the out-of-pocket expenses. (Ex. 1, ¶¶ 19-20.)

For class members who have not yet paid out of pocket, and are currently covered by Anthem, they can submit their requests for the microprocessor lower limb prostheses pursuant to the terms of their existing Anthem contracts. (Ex. 1, ¶ 21.)

### 3.    No preferential treatment for the class representative.

As part of the Settlement, Atzin and Andersen receive the same benefit as other class members. They can make requests for reimbursement of expenses incurred for microprocessor controlled lower limbs to Anthem for reimbursement under the Current Medical Policy, or request coverage for new prosthetic devices.

The proposed Settlement also provides that Atzin and Andersen will each receive an incentive award of $15,000. (Ex. 1, ¶ 25.) This is a reasonable amount given their efforts in pursuing the obtained relief for the Class.

### 4.    The views of experienced counsel.

Class Counsel are experienced in cases of this nature having certified and tried cases against health plans over their refusals to provide benefits. *Gallimore v. Kaiser Foundation Health Plan, Inc.*, Alameda Superior Court, Case No. RG12616206 (judgment obtained for class against California's largest health plan over its systematic denial of reconstructive surgery benefits); *Arce v. Kaiser Foundation Health Plan, Inc.*, Los Angeles Superior Court, Case No. BC388689 (recovery of

benefits from health plan for class of autistic children); *Escalante v. California Physicians Service dba Blue Shield of California* (C.D. Cal.) Case No. 2:14-CV-3021 (reversal of health insurer's position on lumbar artificial disc replacement surgery); *Ticconi v. Blue Shield Life & Health Ins. Co.*, Los Angeles Superior Court, Case No. BC330989 (reversal of health insurer's practice of rescinding policies). (Gianelli Decl., ¶ 3.)

It is the view of Class Counsel that the Settlement is reasonable, fair, and adequate. (Gianelli Decl., ¶ 19.) The Settlement should be preliminarily approved.

# V.    PROPOSED SCHEDULE

Based on the foregoing, Plaintiffs respectfully requests that the Court set the following schedule for the dissemination of the class notice and the setting of the final approval hearing in this case:

| Event | Event Date |
| --- | --- |
| Anthem provides the notice required under the Class Action Fairness Act pursuant to 28 U.S.C. § 1715. | Not More than 10 days after Plaintiff files a motion for preliminary approval |
| Anthem provides mailing data for Class Members to the Settlement Administrator | 30 days from the date of the Preliminary Approval Order |
| Class Counsel files a motion for an award of attorneys' fees and costs and class representative incentive award | 30 days from the date of the Preliminary Approval Order |
| The Administrator mails the notice of the proposed Settlement | 45 days from the date of the Preliminary Approval Order |
| Deadline for postmarking of exclusions and objections | 80 days from the date of the Preliminary Approval Order |
| Deadline for postmarking and filing requests to be heard at the Final Approval Hearing | 90 days from the date of the Preliminary Approval Order |
| Class Counsel to file a motion for final approval | 28 days prior to the Final Approval Hearing |
| Final Approval Hearing | To be set by the Court, no earlier than 120 days from the date of the Preliminary Approval Order |

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an Order:

1.    Certifying the Atzin (Knee) Class, appointing Lacy Atzin as class representative, and appointing Gianelli & Morris and Doyle Law, APC as class counsel ("Class Counsel");

2.    Preliminarily approving the proposed Settlement of the Class;

3.    Approving issuance of notice to the Class; and

4.    Setting a hearing for final approval of the Settlement and the motion by Plaintiffs and Class Counsel for an award of attorneys' fees and expenses and an incentive awards for the class representatives Lacy Atzin and Mark Andersen.

DATED: October 20, 2021                                GIANELLI & MORRIS


By:   /s/ Joshua S. Davis
        ROBERT S. GIANELLI
        JOSHUA S. DAVIS
        ADRIAN J. BARRIO
        Attorneys for Plaintiffs