ROBERT S. GIANELLI, #82116
TIMOTHY J. MORRIS, #80440
JOSHUA S. DAVIS, #193187
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, CA 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
tim.morris@gmlawyers.com
joshua.davis@gmlawyers.com

CONAL DOYLE, # 227554
STEPHEN BEKE, # 290972
Conal Doyle
DOYLE LAW
280 S. Beverly Drive
Penthouse
Beverly Hills, CA 90212
Tel: (310) 385-0567; Fax (310) 943-1780
conal@conaldoylelaw.com
sbeke@conaldoylelaw.com

Attorneys for Plaintiffs
LACY ATZIN and MARK ANDERSEN,
on behalf of themselves and all others
similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LACY ATZIN; MARK ANDERSEN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHEM, INC.; ANTHEM UM SERVICES, INC.,<br><br>Defendants. | Case No.: 2:17-cv-6816 ODW (PLAx)<br>Assigned to Hon.: OTIS D. WRIGHT, II<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT**<br><br>Date:  August 29, 2022<br>Time: 1:30 p.m.<br>Dept:  5D |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 29, 2022 at 1:30 p.m. in Courtroom 5D of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, CA 90012, Plaintiffs will move the Court under Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, and 29 U.S.C. section 1132(g)(1), for an order: (1) finding that the Class Notice has been adequate and reasonable, met the requirements of Rule 23, and has constituted the best notice practicable under the circumstances; (2) granting final approval of the proposed class action Settlement; and (3) directing entry of Final Judgment, dismissing the action (including all individual and class claims presented thereby) on the merits with prejudice.

This Motion is based on this Notice of Motion and Motion, the attached memorandum of points and authorities in support thereof, the Declaration of Michael J. Heuring on Behalf of Settlement Administrator Rust Consulting, Inc. and the Declaration of John Michael, C.P.O. in Support of Final Approval of Settlement filed on May 20, 2022 (Dkt. 110). This Motion is also based on Plaintiffs' Motion for Approval of Attorneys' Fees and Class Representative Service Awards ("Fee Motion"), filed on July 8, 2022 (Dkt. 111); the declarations and exhibits submitted in support of the Fee Motion; the entire record in this proceeding, including but not limited to the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. 97); the First Amendment to Settlement Agreement in Response to Order Conditionally Granting Motion for Preliminary Approval of Class Action Settlement (Dkt. 108); the Court's findings and conclusions contained in its Order Conditionally Granting Motion for Preliminary Approval of Class Action Settlement (Dkt. 105) and

///
///
///
///

1

Order Granting Motion for Preliminary Approval of Class Action Settlement Pursuant to Order Conditionally Granting Motion (Dkt. 109); the Court's files and records in this matter; and upon such other matters as may be presented at the time of the hearing.

DATED:  July 22, 2022                              GIANELLI & MORRIS
                                                   DOYLE LAW


                                   By:    /s/ Joshua S. Davis
                                          ROBERT S. GIANELLI
                                          TIMOTHY J. MORRIS
                                          JOSHUA S. DAVIS
                                          Attorneys for Plaintiffs

# TABLE OF CONTENTS

*Pages*

MEMORANDUM OF POINTS AND AUTHORITIES……………………….. 1

I.     INTRODUCTION……………………………………………………….. 1

II.    SUMMARY OF THE LITIGATION…………………………………2

III.    THE SETTLEMENT SHOULD BE FINALLY APPROVED……….. 2

      A.    The Class Notice was adequate and effective………………….. 3

           1.    The Administrator has provided the best practicable notice of the settlement to the Class Members in the manner directed by this Court……………………………… 3

           2.    The Class Notice adequately informed Class Members of the Settlement…………………………………………………4

      B.    The Settlement is fundamentally fair, adequate and reasonable.. 5

           1.    Strength of the Class Claims…………………………………. 5

           2.    Risk and expense of further litigation…………………… 7

           3.    Risk of maintaining class action status through trial……..7

           4.    Amount and benefits of the Settlement…………………..7

           5.    Extent of discovery and state of proceedings, including the absence of collusion…………………………………..11

           6.    Experience and views of counsel…………………………13

           7.    The reaction of the Class has been overwhelmingly positive and strongly supports approval…………………..13

      C.    All CAFA requirements have been or will be satisfied by the date of the Final Approval Hearing……………………………..14

IV.    CONCLUSION……………………………………………………………15

# TABLE OF AUTHORITIES

*Pages*

*Bayat v. Bank of the West*
    No. C–13–2376 EMC, 2015 WL 1744342, at *4
    (N.D. Cal. April 15, 2015)……………………………………….. 7

*Churchill Village, LLC v. General Electric*
    361 F.3d 566 (9th Cir. 2004)………………………………….... 4

*Class Pls. v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992)………………………………….... 5

*Davis v. City & Cnty. of San Francisco*,
    890 F.2d 1438 (9th Cir.1989)………………………………….. 5

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998)…………………………………... 7, 13

*In re Integra Realty Res., Inc.*
    262 F.3d 1089 (10th Cir. 2001)……………………………….. 4

*In re Mego Financial Corp. Securities Litigation*
    213 F.3d 454 (9th Cir. 2000)…………………………………….. 5

*In re Pac. Enters. Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995)………………………………….. 13

*In re Syncor ERISA Litigation*
    516 F.3d 1095 (9th Cir. 2008)……………………………….. 2

*In re TOYS "R" US-DELAWARE, INC.*
    295 F.R.D. 438 (C.D. Cal. 2014)…………………………….. 13

*Lane v. Brown*
    166 F.Supp.3d 1180, 1189 (D. Or. 2016)……………………...7

*Monterrubio v. Best Buy Stores, LP.*
    291 F.R.D. 443 (E.D. Cal. 2013)…………………………….. 3

*Mullane v. Cent. Hanover Bank & Trust Co.*
    339 U.S. 306 (1950)…………………………………………….3

# TABLE OF AUTHORITIES

*Pages*

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
   221 F.R.D. 523 (C.D. Cal.2004)…………………………………2, 5, 11, 12

*Officers for Justice v. Civil Serv. Comm'n*
   688 F.2d 615 (9th Cir. 1982)…………………………………….. 2, 5

*Rodriguez v. West Publishing Corp.*
   563 F.3d 948 (9th Cir. 2009)……………………………………. 12

*Ross v. A.H. Robins*
   700 F.Supp. 682 (S.D.N.Y. 1988)……………………………….. 14

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term*
*Disability Income Plan*
   85 F.3d 455 (9th Cir. 1996)……………………………………. 10

*Schleibaum v. Kmart Corp.*
   153 F.3d 496 (7th Cir. 1998…………………………………... 11

*Torrisi v. Tucson Elec. Power Co.*
   8 F.3d 1370 (9th Cir.1993)……………………………………. 5

**Statutes**

Federal Rules of Civil Procedure
   Rule 23(e)………………………………………………… *passim*

United States Code
   Title 28 § 1715(d)…………………………………………....14

**Treatises**

Americans with Disabilities Act of 1990……………………………….. 8

The Class Action Fairness Act
   S. Rep. No. 109-14, at 32 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3.... 14

MANUAL FOR COMPLEX LITIGATION, THIRD
   § 30.14, at 236-37 (1995)……………………………………....2

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

On May 9, 2022, the Court preliminarily approved the Settlement Agreement ("the Settlement") between Plaintiffs Lacy Atzin and Mark Andersen (collectively, "Plaintiffs"), on the one hand, and Defendants Anthem, Inc. and Anthem UM Services (collectively "Anthem"), on the other, finding it fair, adequate, reasonable, and within the realm of possible final approval. (Dkts. 105 and 109.) Nothing has occurred since then to deviate from that finding.

Plaintiffs respectfully request the Court finally approve the Settlement, which provides substantially all of the relief requested in the pleadings. Anthem has agreed to remove its "investigational" bar to coverage from its Medical Policy on microprocessor controlled foot-ankle devices. Anthem has also agreed to adopt medical necessity coverage criteria for microprocessor knee and foot-ankle devices that so that they now fall within current generally accepted standards of medical practice. (Settlement, ¶¶ 15-16; Decl. of John Michael in support of preliminary approval (Dkt. 97-2); ¶¶ 15-20.) The Settlement also affords retrospective injunctive relief, requiring Anthem to reprocess the class members' denied claims using the new coverage criteria.

The parties reached this Settlement after extensive, arms-length negotiations, which followed more than four years of hard-fought litigation. Through these numerous battles, discovery and investigation, and consultation with experts, the parties were made aware of the strengths and weaknesses of the claims and defenses and well positioned to assess the fairness, adequacy, and reasonableness of the Settlement against the risks and uncertainties of continued litigation.

As required by the relevant Ninth Circuit authority and Rule 23(e) of the Federal Rules of Civil Procedure, the Settlement is fundamentally fair, adequate and reasonable. Further, the Class Notice has satisfied Rule 23(c)(2)(B) and (e)(B), and has provided the best notice practicable under the circumstances. Accordingly, the

Court should issue a final order and judgment certifying the Class and granting final approval of the Settlement.

## II. SUMMARY OF THE LITIGATION

For a history of the litigation, summary of the settlement negotiations, and a discussion of the settlement terms, see Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, the supporting declaration of Class Counsel to that motion, and Plaintiffs' Motion for Approval of Attorneys' Fees and Class Representative Service Awards (Fee Motion). (Dkt. 97 at pp. 9-16; Dkt. 97-1 at ¶¶ 6-27; Dkt. 111 at pp. 9-13; Dkt. ¶¶ 5-18.)[1]

## III. THE SETTLEMENT SHOULD BE FINALLY APPROVED

Rule 23(e)(1)(A) requires that the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Approval under Rule 23 involves a two-step process "in which the [c]ourt first determines whether a proposed class action deserves preliminary approval and then, after notice is given to the class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.14, at 236-37 (1995). The Ninth Circuit has noted that, in considering whether to finally approve a settlement, "there is a strong judicial policy that favors settlements, particularly where class action litigation is concerned." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation.") *cert denied*, 495 U.S. 1217 (1983).

---

[1] Page references for documents filed and appearing on the Court's docket are to the pagination at the top of the document automatically provided by the federal courts' Case Management/Electronic Case Files (CM/ECF) system upon electronic filing of the document.

Here, this Court preliminarily approved the Settlement on May 9, 2022 on the terms set forth in its Order conditionally granting preliminary approval on April 22, 2022 (Dkts. 105 and 109.)  As explained below, notice has been given to the Class Members in accordance with the Court's directions. As of the July 19, 2022, the Settlement Administrator has received zero objections and no requests for exclusion.[2] Nothing has changed which would cause this Court to deviate from its preliminary finding.

### A.   The Class Notice was adequate and effective.

#### 1.   The Administrator has provided the best practicable notice of the settlement to the Class Members in the manner directed by this Court.

Rule 23(e) requires that "notice of the proposed dismissal and compromise [of a class action] shall be given to all members of the class in such a manner as the court directs." Notice by mail is sufficient to provide due process to known affected parties, so long as the notice is "reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Monterrubio v. Best Buy Stores, LP.*, 291 F.R.D. 443, 452 (E.D. Cal. 2013) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

In its May 9, 2022 Order Preliminarily Approving the Class Settlement, the Court approved the notice provisions in paragraphs 29-31 of the Settlement, as amended by the First Amendment to the Settlement Agreement, and the form of the Class Notice attached to the Settlement as Exhibit A. (Dkt. 97-1 at p. 23, Dkt. 108 at p. 5; Dkt. 97-1 at p. 38) The Court further directed the Settlement Administrator to both mail the Class Notice to the identified Class Members by first-class mail and

---

[2] The deadline for exclusions and objections is July 28, 2022, three days after the motion for final approval is due.  Plaintiffs will submit a supplemental declaration of the Settlement Administrator providing an update on any objections or exclusions at least two weeks before the final approval hearing.

email to his or her last known address no later than 45 days after entry of the order. (*Id*. at p. 4, ¶¶ 7, 8.)

Pursuant to the Court's Orders, the Settlement Administrator provided Class Notice to the 168 identified Class Members by mail on June 23, 2022.  (Heuring Decl., ¶ 9.)  The Settlement Administrator also provided Class Notice to 70 of the above Class Members by email. (*Id.* at ¶ 10.) As of July 19, 2022, zero mailed notices had been returned as undeliverable. (*Id*. at ¶ 11.) Nine of the notice emails were undeliverable, although the mailed notice to each of these Class Members was successful. (*Id*.) Thus, 100 percent of the Class Members received the Class Notice. That is more than sufficient to satisfy Rule 23(c). *See, e.g., In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-1118 (10th Cir. 2001) (Rule 23 and due process satisfied where 77% of class members received notice of settlement.).

## 2.   The Class Notice adequately informed Class Members of the Settlement.

Notice is satisfactory if it "'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, LLC v. General Electric,* 361 F.3d 566, 575 (9th Cir. 2004). In addition, Rule 23(h)(1) requires that notice of Class Counsel's request for attorneys' fees be "directed to class members in a reasonable manner." The *Atzin* Class Notice easily satisfies these requirements.

The Class Notice clearly and concisely states in plain, easily understood language the nature of the action, the defined Class, the class claims, issues and defenses, the terms of the Settlement, including attorneys' fees paid to Class Counsel, that a Class Member may object to the Settlement, that the Court will exclude anyone from the *Atzin* Class who requests exclusion, the time and manner for requesting exclusion or objecting to the Settlement, and the binding effect of a class judgment on members under Rule 23(c)(3). (*See* Ex. C to Heuring Decl.) Thus, the Class Notice adequately informed Class Members of the proposed Settlement.

**B.     The Settlement is fundamentally fair, adequate and reasonable.**

The Ninth Circuit has interpreted Rule 23(e) to require the district court to determine whether a proposed settlement is "fundamentally fair, adequate and reasonable." *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 458 (9th Cir. 2000). To make this determination, courts "may consider some or all of the following factors," including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* In addition, the settlement cannot be the product of collusion among the negotiating parties. *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992).

Not all factors will apply to every class action settlement, and certain factors may predominate depending on the nature of the case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir.1993). "The degree of importance attached to each factor is determined by the nature of the claim, the type of relief sought and the facts and circumstances of each case." *Davis v. City & Cnty. of San Francisco*, 890 F.2d 1438, 1444–45 (9th Cir.1989).

**1.     Strength of the Class Claims.**

A key factor in considering the reasonableness of a settlement "is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecomms. Coop., supra.*, 221 F.R.D. at 526 (internal quotation marks and citation omitted). However, the court's role is not "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, *supra*, 688 F.2d at 625.

The strength of the class claims in this case weighs decisively in favor of settlement approval.  This case was brought to address two practices: (1) Anthem's practice to deny most microprocessor controlled knee limb prosthesis as not medically necessary using erroneous criteria in Policy No. OR-PR.00003 (the "Former Medical Policy") and (2) Anthem's practice to deny all microprocessor controlled foot-ankle prosthesis as "investigational" pursuant to a coverage position set from the Former Medical Policy.

Plaintiffs' position that Anthem's practices were wrong is strong. As set forth in the expert declarations of John McMichael, C.P.O., there is substantial evidence that the criteria used by Anthem to deny request for microprocessor knee prosthesis in the Former Medical Policy were not in accordance with generally accepted standards of medical practice. (Dkt. 97-2 at ¶ 13.) More specifically, Criteria 1 and 2 were predicated on a person with a prosthetic leg demonstrating the ability to master "a faster than normal walking speed" and doing it with a "standard swing and stance" device.  While a microprocessor-controlled knee prosthesis may allow a person to walk faster, this is only one of the benefits of the device, and the Former Medical Policy failed to recognize that they also allow people to accomplish "normal" activities of daily living. For instance, a microprocessor controlled knee creates better stability and therefore reduces the incidence of stumbles and falls in everyday settings, including their homes. In addition, criteria 3 and 4 imposed unreasonable distance requirements and demands regarding "regular" use of uneven terrain or stairs while excluding the use of home or workplace stairs. (*Id*.)

There is also substantial evidence that Anthem's position that microprocessor-controlled foot-ankle prothesisis were "investigational" was wrong.  Among other reasons, they are generally accepted as proven and effective within the medical community and improve health outcomes for the appropriate patients.  (Dkt. 97-2 at ¶ 14.)

### 2.      Risk and expense of further litigation.

Despite the strength of Plaintiffs' position, had this case not settled, the parties faced an expensive, multi-week trial. Indeed, although the parties "had already incurred significant litigation expenses, the cost of preparing for and handling the trial with a number of expert witnesses on both sides would have been enormous." *Lane v. Brown*, 166 F.Supp.3d 1180, 1189 (D. Or. 2016). Anthem would argue, that even if their coverage position was wrong, it was not unreasonable and thus they did not abuse their discretion. Moreover, "no matter who won at trial, an appeal was likely, adding further costs." *Id*. Finally, even if Plaintiffs prevailed, "the precise nature and scope of relief ordered by the court may not have been as comprehensive or detailed as contained in the Agreement and could have taken potentially many more years to implement." *Id*. The risk and expense of further litigation thus weigh in favor of approval. *Id*.

### 3.      Risk of maintaining class action status through trial.

The parties' settlement eliminates any risk of decertification and "immunizes the class certification order from attack by [Anthem]." *Lane*, *supra*, 166 F.Supp.3d at 1189. This factor weighs in favor of approval. *Id*.

### 4.      Amount and benefits of the Settlement.

"[T]he critical component of any settlement is the amount of relief obtained by the class." *Lane*, *supra*, 166 F.Supp.3d at 1189 (quoting *Bayat v. Bank of the West*, No. C–13–2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. April 15, 2015)). A settlement that provides for "comprehensive and substantial" injunctive relief weighs strongly in favor of approval. *Lane*, *supra*, 166 F.3d at 1189 (approving injunctive relief settlement that, among other things, required the State of Oregon to "create and implement a number of policies and practices to facilitate compliance with the [Americans with Disabilities Act of 1990]"). *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (approving injunctive relief settlement that "obligate[d]" the defendant to "make [its] minivans safe").

To remedy the practices identified *supra* at section III.B.1, Plaintiffs sought an injunction requiring Anthem to adopt proper medical necessity criteria, re-review the denied claims under the proper standard, and make payment where appropriate. (Dkt. 1 at ¶ 60.)

The proposed Settlement effectively provides all the relief requested. Anthem has agreed to remove its "investigational" coverage position from its Current Medical Policy on microprocessor controlled foot-ankle devices.  (Settlement, ¶ 16 (Dkt 97-1 at 19).) Anthem has also agreed, after receiving input from Plaintiffs' experts, to adopt medical necessity coverage criteria for microprocessor knee and foot-ankle devices that now fall within current generally accepted standards of medical practice. (Settlement, ¶¶ 15-16; Decl. of John Michael in support of preliminary approval (Dkt. 97-2); ¶¶ 15-20.)

As set forth in the Declaration of John Michael, C.P.O. in support of final approval of settlement (Dkt. 110), the changes Anthem are making are significant and impactful.  First, providing a medical necessity policy for microprocessor ankle, instead of an "investigational" and not covered for all indications coverage position, is a monumental change. (Dkt. 110, ¶ 12.)  The changes to the medical necessity criteria for microprocessor knees are also significant and confer a substantial benefit.

The Former Medical Policy contained several major impediments to coverage that are no longer present. For example, it required "daily long distance ambulation" of greater than 400 yards. (Ex. 2 to Motion for Preliminary Approval (Dkt. 97-1 at 112).) This is a very high burden to meet for the great majority of transfemoral amputees. Indeed, the majority of the "able bodied" population likely does not walk 400 yards continuously on a daily basis. (Dkt. 110, ¶ 13.) That is the equivalent of walking four football fields without stopping. The new Anthem policy does not require "daily long distance" ambulation, but merely "ambulation in situations where the device will provide benefit (for example, regular need to ascend/descend stairs, traverse uneven surfaces **or** ambulate for long distances [generally 400 yards or

8

greater *cumulatively*])". (Ex. F to Settlement (Dkt. 97-1 at 93).) This new policy does not require ambulation for long distances at all-if the amputee has regular need to traverse variable terrain. And even the term "long distance" is qualified by indicating that only 400 yards/379 steps per day *cumulatively* (as opposed to continuously) is required. (*Id.*) For context, a typical ambulatory transfemoral amputee walks approximately *2.8-7.1 times* that distance on a daily basis. (Dkt. 110 at ¶ 13.) This requirement went from a difficult, almost impossibly high bar, to one that is readily met. (*Id.*) This one policy change alone was significant and impactful and should undoubtedly result in more transfemoral amputees qualifying for a microprocessor knee. (*Id.*)

The Former Medical Policy also required that the amputee demonstrate the ability for "faster than normal walking speed" and "the ability to ambulate faster than their baseline rate using a standard swing and stance lower extremity prosthesis." (Dkt. 97-1 at 112 (criteria 1 and 2).) The new policy omits reference to walking speed entirely. (Dkt. 97-1 at 93.) This was a significant change for several reasons. First, the old language was vague, ill defined, and difficult to interpret, e.g., how do you define "normal walking speed"? (Dkt. 110 at ¶ 14.) What is a "swing and stance" lower extremity prosthesis (they all have "swing" and "stance")? (*Id.*) Second, increased speed of ambulation *may* be a secondary "benefit" of a microprocessor knee, but a microprocessor knee is not designed primarily to increase speed or act as an athletic device: it is an everyday walking device that is notable for its increased safety and stability. (*Id.*) In other words, making an increase in walking speed a requirement completely misses the point of the device based on current best evidence, and is an unnecessary barrier to entry that is typically not measured by a prosthetist during a prosthetic evaluation and fitting. (*Id.*) It also may be difficult to even measure as it would require a prosthetist to have a loaner microprocessor knee available to conduct a speed walking test. (*Id.*) Again, the Medical Policy does away with all of this. (*Id.*)

1   Finally, the old Anthem policy provided that "use within the home or for basic

2   community ambulation is not sufficient"…to qualify as "daily long distance"

3   ambulation; and the "use of a limb for limited stair climbing in the home or place of

4   employment is not sufficient"…to demonstrate "need for regular ambulation on

5   uneven terrain or regular use on stairs." (Dkt. 97-1 at 112.) These limitations

6   effectively gutted most of what a typical amputee (and arguably most able bodied

7   adults) would use a limb for: getting around the house and at work. (Dkt. 110 at ¶ 15.)

8   After all, a microprocessor knee is not a knee that is to be used for sports or athletic

9   endeavors-there are other, much simpler, devices for those purposes.  (*Id*.) The new

10  policy omits these unreasonable and artificial barriers to demonstrating need for a

11  microprocessor limb. (*Id*.)

12      In addition to reviewing future requests under the new revised Current

13  Guidelines, Anthem must re-review the claims of class members whose requests for

14  microprocessor knee or foot-ankle devices were denied under the earlier guidelines.

15  Process Changes. (Settlement, ¶¶ 19-22 (Dkt. 97-1 at pp. 8-10.) If the claim for

16  reimbursement satisfies the criteria under its Current Medical Policy, Anthem will

17  reimburse the class member for the out-of-pocket expenses. (*Id*.) For class members

18  who have not yet paid out of pocket, and are currently covered by Anthem, they can

19  submit their requests for the microprocessor lower limb prostheses pursuant to the

20  terms of their existing Anthem contracts. (*Id*., ¶ 21.)

21      Reprocessing under the correct standard is the *only* appropriate relief under

22  ERISA for class members whose requests for prostheses benefits were denied in

23  violation of the plans' "minimum specifications" provision and/or ERISA claim

24  regulations. *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability*

25  *Income Plan*, 85 F.3d 455, 460-461 (9th Cir. 1996) (reprocessing is appropriate

26  injunctive relief for denial of plan benefits when an ERISA administrator violates

27  terms of plan or applies wrong standard in making a benefit determination);

28  *Schleibaum v. Kmart Corp*., 153 F.3d 496, 503 (7th Cir. 1998) ("Normally, in an

1   action for an inadequate denial letter, the remedy is to remand the case to the

2   administrator for a full and fair hearing of the claim[.]").

3       Thus, the Settlement provides "comprehensive and substantial" injunctive

4   relief to the Class and weighs strongly in favor of approval. *Lane, supra*, 166 F.3d

5   at 1189. It cements a sea change in Anthem's practices for adjudicating lower limb

6   microprocessor prosthesis claims, and provides redress for previously denied lower

7   limb prostheses claims, accomplishing the fundamental purpose of the subject

8   lawsuits.

9       **5.   Extent of discovery and state of proceedings, including the absence of collusion.**

10

11      The extent of discovery completed and the state of the proceedings at the time

12  of settlement is an indicator of whether the parties have a sufficient understanding of

13  each other's cases to make an informed judgment about their likelihood of prevailing.

14  Typically, "[a] court is more likely to approve a settlement if most of the discovery

15  is completed because it suggests that the parties arrived at a compromise based on a

16  full understanding of the legal and factual issues surrounding the case." *Nat'l Rural*

17  *Telecomm. Coop.*, *supra*, 221 F.R.D. at 527 (internal quotation marks and citation

18  omitted). For that reason, "[a] settlement following sufficient discovery and genuine

19  arms-length negotiation is presumed fair." *Id.* at 528.

20      The parties' settlement occurred over nearly 4 years after this action was filed

21  and was well informed by the discovery and investigation completed up to that point.

22  (Gianelli Decl. filed in support of motion for preliminary approval (Dkt. 97-1, ¶ 23.)

23  At the time of settlement, Anthem had produced over 2,282 pages of information

24  concerning the class and merits issues in the case. (*Id.*) For their part, Plaintiffs

25  produced nearly 1,000 pages of information supportive of their position that

26  Anthem's policies and practices are amenable to class treatment, regarding proper

27  criteria for microprocessor-controlled knee prostheses, and that microprocessor foot-

28  ankle prostheses are safe and effective. (*Id.*)

All told, Plaintiffs served and Anthem responded to 34 document requests, 25 interrogatories, and numerous requests for admission. Discovery was hard fought and contested. (Dkt. 97-1 at ¶ 24.) Plaintiffs brought three motions to compel, which were granted in part on January 13, 2021. (Dkt. 87.)

Plaintiffs also took the deposition of Anthem's corporate designee ("Person Most Knowledgeable") to address merits issues relating to the safety and effectiveness of foot-ankle prostheses. (Dkt. 97-1 at ¶ 25.)

Class Counsel supplemented formal discovery with their own investigation and research. (Dkt. 97-1 at ¶ 26.) Class Counsel engaged in extensive investigation and research regarding appropriate medical necessity criteria for microprocessor-controlled lower limb prostheses, and the safety and effectiveness of microprocessor-controlled foot-ankle prostheses. Class Counsel also retained and worked with experts on microprocessor-controlled prosthetics and the pertinent body of medical literature. (*Id.*) No stone was left unturned in examining the strengths and weaknesses of the case.

The negotiations were intense and at arms'-length and ultimately resulted in a settlement that provides the class with substantially all of the relief requested in the Complaint. (Dkt. 97-1 at ¶¶ 27-28.)

Accordingly, the settlement was reached after the parties achieved "a full understanding of the legal and factual issues surrounding the case," and represents the end-result of an adversarial process where the interests of *Atzin* Class was vigorously and fully represented by Class Counsel. *Nat'l Rural Telecomm. Coop.*, *supra*, 221 F.R.D. at 527.

"Nor is there any dispute that counsel had considerable experience in litigating … class actions, and other complex litigation." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Plaintiffs and the Classes are represented by counsel who have extensive experience in the litigation of insurance class actions and have successfully prosecuted other class actions over policyholders' rights to

health benefits. (Dkt. 97-1 at ¶¶ 2-5, 29.) Anthem is represented by the law firm of Reed Smith LLP, a firm that has expertise in health care matters and that regularly represents Anthem and other health plans.

The Ninth Circuit has held that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]" *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Thus, this factor weighs in favor of approval.

### 6. Experience and views of counsel.

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re TOYS "R" US-DELAWARE, INC.*, 295 F.R.D. 438, 455 (C.D. Cal. 2014). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995).

As set forth in the declarations submitted with the Preliminary Approval Motion and Fee Motion, Class Counsel has extensive experience prosecuting insurance class actions, and has represented policyholders in a number of published insurance law decisions. (Dkt. 97-1 at ¶¶ 2-4, 29; Dkt. 111-1 at ¶¶ 2-4, 24-26; Dkt. 111-2 at ¶¶ 2-6) Class Counsel's belief that the proposed Settlement is fair, adequate and reasonable weighs in favor of approval. (Dkt. 97-1 at ¶ 28.)

### 7. The reaction of the Class has been overwhelmingly positive and strongly supports approval.

The parties have received zero requests for exclusion and zero objections to the proposed Settlement. (Heuring Decl. at ¶ 9.) This is itself strong evidence of the Settlement's fairness. *See Hanlon*, *supra*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *See also*, *Ross v. A.H. Robins*, 700 F.Supp. 682, 684 (S.D.N.Y. 1988) ("[T]he absence of

objectants may itself be taken as evidencing the fairness of a settlement."). The overwhelmingly positive reaction of the Class Members is strong evidence that the Settlement is fundamentally fair, adequate and reasonable.

**C.   All CAFA requirements have been or will be satisfied by the date of the Final Approval Hearing.**

The Class Action Fairness Act of 2005 ("CAFA") requires defendants who settle federal class actions to "serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official...." 28 U.S.C. § 1715(b). As explained in Senate Report 109-14 from the Senate Judiciary Committee, this section "is designed to ensure that a responsible state and/or federal official receives information about proposed class action settlements and is in a position to react if the settlement appears unfair to some or all class members or inconsistent with applicable regulatory policies." S. Rep. No. 109-14, at 32 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3.

Pursuant to the requirements of CAFA, on October 29, 2021, the Anthem notified the appropriate state and federal officials of the Settlement (the "CAFA Notice"). (Heuring Decl., ¶ 4.) Anthem has received no response to the CAFA notice. (*Id*. at ¶ 5.)

CAFA further provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)." 28 U.S.C. § 1715(d). Based on the October 29, 2021 service date, above, the 90-day CAFA notice period expired on November January 27, 2022.

///

///

///

///

14

## IV.   CONCLUSION

For all of the reasons set forth above, Plaintiffs respectfully request that this Court issue an Order: (1) finding that the Class Notice was adequate and reasonable, met the requirements of Rule 23, and constituted the best notice practicable under the circumstances; (2) granting final approval of the Settlement; and (3) directing entry of Final Judgment, dismissing the Action (including all individual and class claims presented thereby) on the merits with prejudice.

DATED:  July 22, 2022                              GIANELLI & MORRIS

                                         By:   /s/ Joshua S. Davis
                                               ROBERT S. GIANELLI
                                               TIMOTHY J. MORRIS
                                               JOSHUA S. DAVIS
                                               Attorneys for Plaintiffs