O

# United States District Court
# Central District of California

LACY ATZIN and MARK ANDERSEN, on behalf of themselves and all others similarly situated,

     Plaintiffs,

  v.

ANTHEM, INC., et al.,

     Defendants.

Case № 2:17-cv-06816-ODW (PLAx)

**ORDER CONDITIONALLY GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [113] AND GRANTING MOTION FOR ATTORNEYS' FEES [111]**

## I. INTRODUCTION

Plaintiffs Lacy Atzin and Mark Andersen, individually and on behalf of two subclasses of insureds, bring this case under the Employee Retirement Income Security Act of 1974 ("ERISA") to require their insurer, Defendants Anthem, Inc. and Anthem UM Services (together, "Anthem"), to reprocess previously denied claims under new medical necessity criteria. On May 6, 2020, the Court certified Andersen's subclass pursuant to the parties' agreement. (Order Granting Foot/Ankle Class Certification, ECF No. 63.) On April 22, 2022, the Court granted conditional preliminary approval of the parties' class action settlement, including conditional certification of Atzin's subclass, (Order Cond. Granting Prelim. Approval, ECF No. 105), and then, on May 9,

2022, the Court granted preliminary approval in full, (Order Granting Prelim. Approval, ECF No. 109).

On July 8, 2022, Plaintiffs filed a Motion for Attorneys' Fees, (Fee Mot., ECF No. 111), and on July 22, 2022, they filed a Motion for Final Approval of Class Action Settlement, (Final Approval Mot., ECF No. 113). Defendants do not oppose, and no class member objects to, either Motion. (*See* Suppl. Decl. Michael Heuring ¶ 3, ECF No. 116.) On August 29, 2022, the Court held a final approval hearing and took the matter under submission. For the following reasons, the Court **CONDITIONALLY GRANTS** final settlement approval and substantially **GRANTS** the fee motion.

## II. BACKGROUND

Anthem provides and administers health benefit plans, and Atzin and Andersen are participants in Anthem plans. (Compl. ¶¶ 1–2, ECF No. 1.) Anthem denied Atzin and Andersen benefits by denying reimbursement for a microprocessor-controlled prosthesis. (*Id.* ¶ 3.)

Under the terms of the plans, Anthem denies coverage for treatments that are not "medically necessary" or are "investigational." (*Id.* ¶¶ 19–20.) Anthem utilizes coverage guidelines to assist it in determining whether one of these two reasons supports denial of coverage. (*Id.* ¶ 16.) One such coverage guideline is OR-PR.00003, Anthem's medical policy for microprocessor-controlled lower limb prostheses. (*Id.* ¶ 21.)

### A. Andersen and the Foot/Ankle Subclass

Andersen sought reimbursement from Anthem for the use of a microprocessor prosthesis for his foot and ankle. The OR-PR.00003 guideline sets forth Anthem's prior blanket policy of denying all requests for microprocessor-controlled foot-ankle prostheses on the basis that they are investigational. (Compl. ¶¶ 23–24.) Pursuant to this policy, Anthem denied Andersen benefits. Andersen sued on behalf of the "Foot/Ankle Subclass," that is, the class of Anthem health plan participants who sought benefits in connection with a foot/ankle microprocessor prosthesis and whose claim or request Anthem denied during the applicable limitations period. (*See id.* ¶ 37.) This

subclass has eighty-four members. (Prelim. Approval Mot. Decl. Scott Hicks ("Hicks Decl.") ¶ 5, ECF No. 97-3.)

On May 6, 2020, the Court certified this subclass under Federal Rule of Civil Procedure ("Rule") 23(b)(2). (Order Granting Foot/Ankle Class Certification 9.)

**B.     Atzin and the Knee Subclass**

Atzin sought coverage from Anthem for the use of a microprocessor prosthesis for her knee. The OR-PR.00003 guideline sets forth four criteria Anthem previously used to determine whether a microprocessor-controlled prosthesis for the knee was "medically necessary" for any given claimant. (Compl. ¶ 21.) Under these criteria, Anthem's policies covered a microprocessor knee prosthesis only if the claimant met the following four criteria:

> 1. Individual has adequate cardiovascular reserve and cognitive learning ability to master the higher level technology and to allow for faster than normal walking speed; **and**
>
> 2. Individual has demonstrated the ability to ambulate faster than their baseline rate using a standard swing and stance lower extremity prosthesis; **and**
>
> 3. Individual has a documented need for daily long distance ambulation (for example, greater than 400 yards) at variable rates. (In other words, use within the home or for basic community ambulation is not sufficient to justify the computerized limb over standard limb applications); **and**
>
> 4. Individual has a demonstrated need for regular ambulation on uneven terrain or regular use on stairs. Use of limb for limited stair climbing in the home or place of employment is not sufficient to justify the computerized limb over standard limb applications.

(*See id.*; Fee Mot. 3 (referring to this policy as "Former Medical Policy").) Pursuant to these criteria, Anthem denied Atzin coverage for a microprocessor knee prosthesis. Atzin brought suit on behalf of the "Knee Subclass," defined as the class of Anthem health plan participants who sought benefits in connection with a knee microprocessor

prosthesis and whose claims or requests Anthem denied during the applicable time period. (*See* Compl. ¶ 37.) This subclass has 101 members. (Hicks Decl. ¶ 5.)

The Knee Subclass was certified for purposes of settlement as of May 9, 2022, the date the Court finalized and affirmed its granting of the Motion for Preliminary Approval of Class Action Settlement. (Order Cond. Granting Prelim. Approval 13; *see* Order Granting Prelim. Approval.)

## C. Settlement and Release

Under the terms of the parties' settlement, Anthem agreed to reprocess the claims of each class member under new, modified medical necessity criteria. The new proposed criteria, which will be used in reprocessing the claims of both subclasses, are as follows:

> 1. Individual has adequate cardiovascular reserve and cognitive learning ability to master the higher level technology; **and**
>
> 2. Individual has a functional K-Level 3 or above; **and**
>
> 3. The provider has documented that there is a reasonable likelihood of better mobility or stability with the device instead of a mechanical [knee or foot-ankle] prosthesis; **and**
>
> 4. There is documented need for ambulation in situations where the device will provide benefit (for example, regular need to ascend/descend stairs, traverse uneven surfaces or ambulate for long distances [generally 400 yards or greater cumulatively]).[1]

(Mot. Prelim. Approval 7 (referring to this policy as "Current Medical Policy").) To avail themselves of the benefits of this settlement, class members must submit new claims to Anthem; Anthem will not automatically reprocess old claims.

The settlement provides that, in exchange for the opportunity to have Anthem reprocess their claims under the new criteria, class members will release any and all

---

[1] On May 20, 2021, Anthem began using these new criteria for all new foot/ankle <u>and</u> knee microprocessor prosthesis claimants. (Mot. Prelim. Approval 7.)

claims against Anthem regarding (1) "any denial of microprocessor-controlled knee prostheses under ERISA-governed plans," (2) "any denial of microprocessor-controlled foot-ankle prostheses under ERISA-governed plans," and (3) "the appropriateness of the Former Medical Policy, the Revised Former Medical Policy and/or the Current Medical Policy including, but not limited to, the criteria in those policies." (Decl. Robert S. Gianelli Ex. 1 ("Settlement Agreement") 6–7, ECF No. 97-1.)

In addition to agreeing to reprocess class members' resubmitted claims pursuant to the Current Medical Policy, Anthem agreed to pay up to $850,000 in attorneys' fees and $36,833.99 in costs, and not to oppose Plaintiffs' request for Court approval of these amounts. (*Id.* at 11.)

**D.   Notice and Response; Final Approval Motion**

The Settlement Administrator mailed notice of the settlement to all class members, and, pursuant to the Court's order, the Settlement Administrator additionally sent an email to the seventy class members for whom Anthem had an email address on file. While nine of the emails were returned undeliverable, none of the mailed notices were returned undeliverable. (Final Approval Mot. 3–4.)

No class members have objected to the settlement. (Final Approval Mot. 3; Suppl. Decl. Michael J. Heuring ¶ 3 (confirming that, as of July 28, 2022, the deadline for class members to object, the settlement administrator received zero objections to the settlement).)

Plaintiffs now seek final approval of this settlement. (Final Approval Mot. 1.) Moreover, pursuant to the parties' settlement agreement, Plaintiffs seek approval of an award of $850,000 in attorneys' fees, $36,833.99 in costs, and a $15,000 incentive award for each of the two named Plaintiffs. (Fee Mot. 2.)

### III.   DISCUSSION

The Court first considers the final approval motion before turning to the fee motion.

### A. Motion for Final Settlement Approval

As explained below, class certification remains appropriate, and the settlement is fair, adequate, and reasonable. Moreover, while pre-approval notice to the class was sufficient, given the unique nature of this case, the Court will require the parties to provide the class with an additional round of post-approval notice.

#### 1. Class Certification

In the Order Conditionally Granting Preliminary Approval, the Court explained why this ERISA claims reprocessing suit is appropriate for Rule 23(b)(2) certification. (*See* Order Cond. Granting Prelim. Approval 11–12.) Nothing has changed to disturb that conclusion, and class certification remains appropriate.

#### 2. Fairness of Settlement Terms

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," courts may consider some or all of the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009).

In the Order Conditionally Granting Preliminary Approval, the Court explained that, due to the unique nature of claims reprocessing suits and the typicality problem that can arise when proceeding with such litigation by representation, it was especially incumbent upon the Court to confirm that the class settlement is fair—that is, to confirm that the new medical necessity criteria are an accurate and dependable way of sorting claimants into those for whom a microprocessor prosthesis is medically necessary and those for whom it is not. (Order Cond. Granting Prelim. Approval 9–11.) To this end, the Court ordered Plaintiffs' expert, Dr. John Michael, C.P.O., to file additional

materials supporting Plaintiffs' claim that the new criteria represent a meaningful change from the old criteria and thereby represent a good result for the class. (*Id.* at 18.)

Dr. Michael amply addresses the Court's prior concerns. (Decl. John Michael ISO Final Approval, ECF No. 110.) First, Dr. Michael explains and shows that Anthem's new medical necessity criteria are now functionally the same as the medical necessity criteria that Medicare, United, Aetna, and CIGNA use in handling lower limb microprocessor prosthesis claims. That Anthem's new criteria align with industry standards is very strong evidence that this settlement is a very good result for the class.

Dr. Michael also explains that Anthem's prior medical necessity criteria for knee prostheses were highly restrictive and that the new criteria represent a significant loosening of those restrictions. As one example, whereas the prior criteria covered only those amputees who could demonstrate that the microprocessor knee prosthesis helped them walk *faster* than normal, the new criteria contain no special speed requirement whatsoever. And of course, microprocessor foot/ankle prostheses were previously "investigational"—that is, not covered at all—and so the new criteria, which are meant to provide coverage for a substantial number of amputees, are undeniably a major shift.

That the settlement is fundamentally a very good result for the class is the lion's share of the analysis. The other reasonableness factors provide additional support for finding the settlement to be reasonable, or are either neutral or inapplicable. For these reasons, the Court finds that the proposed settlement is fair, reasonable, and adequate. *See Demaria v. Horizon Healthcare Servs.*, No. 2:11-cv-07298 (WJM), 2016 WL 6089713, at *3 (D.N.J. Oct. 18, 2016) (finding class action claims reprocessing settlement to be reasonable and granting final settlement approval).

### 3. Notice to Government Officials

Under section 1715(b) of the Class Action Fairness Act, 28 U.S.C. § 1715(b), a settling defendant must "serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official" a specified group of documents describing the settlement. Pursuant to § 1715(d), final approval cannot be

issued earlier than ninety days after notice is given under § 1715(b). Anthem served the necessary documents upon the appropriate officials on October 29, 2021, and well over ninety days have passed since that date. (Decl. Michael Heuring ¶¶ 5–6, ECF No. 113-1.) The Court therefore finds that Anthem is in compliance with 28 U.S.C. § 1715.

### 4. Pre-Approval Notice

"Rule 23(e) requires that 'notice of the proposed dismissal or compromise [of a class action] shall be given to all members of the class in such manner as the court directs.'" *In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 448 (C.D. Cal. 2014) (quoting Fed. R. Civ. P. 23(e)). "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Here, while nine of the emails the Settlement Administrator sent to the class were returned undeliverable, none of the notices the Settlement Administrator sent by postal mail were returned undeliverable. (Final Approval Mot. 3–4.) This provides sufficient indication that all class members have received proper notice of this settlement.

As to the contents of the notice, "[n]otice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962 (quoting *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004)). Here, the Court has already carefully scrutinized the notice and found it to be sufficient. (*See* Order Cond. Granting Prelim. Approval 21.)

### 5. Post-Settlement Notice

In an ordinary class action for money damages, after final approval, the defendant transmits the funds to the settlement administrator, who then sends each class member a payment, typically via check or direct deposit. This payment also functions as final notice to the class members that the settlement has been approved and executed. *See,*

*e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 328 (N.D. Cal. 2018). Here, by contrast, because the remedy is an injunction rather than money damages, class members will receive no such checks. Accordingly, at the final approval hearing, the Court raised its concern about post-approval notice, and specifically whether the class members will understand that they need to submit a new claim to Anthem in order to avail themselves of the relief provided by this lawsuit. At the final approval hearing, Plaintiffs' attorneys confirmed their intention to provide class members with post-approval notice to this effect.

In accordance with these observations and counsel's representations, the Court conditionally grants the final approval motion, with instructions to the parties to file a declaration confirming that the class received post-approval notice, as provided in the Conclusion section of this Order. Upon receipt of this declaration, the Court will issue a judgment of dismissal.

**B.  Motion for Attorneys' Fees, Costs & Expenses, and Incentive Awards**

Plaintiffs move for approval of $850,000 in attorneys' fees, $36,833.99 in costs and expenses, and $30,000 in incentive awards ($15,000 x two named Plaintiffs). (Fee Mot. 2.)

**1.  Attorneys' Fees**

The parties have agreed to $850,000 in attorneys' fees. Plaintiffs submit that their lodestar in this case is $882,740.00, based on 1,098.5 hours of work, (*id.* at 12), billed at rates of $900/hour (for Robert S. Gianelli), $700/hour (for Joshua S. Davis), and $675/hour (for Adrian J. Barrio), (*id.* at 14).

Importantly, this is not a common-fund case where attorneys' fees are being deducted from a single undifferentiated settlement pool that the defendant has agreed to fund. *See, e.g.*, *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). In those types of cases, because there is some inverse relationship between the attorney fee award and the amount that goes to class members, it is particularly incumbent upon the Court not to merely capitulate to an attorney fee request, but instead

to scrutinize both the billing records and the hourly rates carefully to ensure that class counsel is not unfairly benefitting at the expense of class members. This concern is not present here, as this is not a case where "[p]laintiffs' counsel, otherwise a fiduciary for the class, . . . become[s] a claimant against the fund created for the benefit of the class." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). Instead, in cases such as this where the defendant pays the attorneys directly and independent of any other monetary obligation, "the Court's fiduciary role in overseeing the award is greatly reduced" because "there is no conflict of interest between attorneys and class members." *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006). Here, as a result of the litigation, and completely irrespective of the amount of attorneys' fees Anthem pays or has agreed to pay, every class member has the opportunity to get their claim reprocessed, and Anthem is bound by both ERISA and general contract law to reprocess each of these claims appropriately.

Therefore, in this case, the Court conducts only a cursory review of the attorney fee request and notes that it appears to be the product of genuine arm's-length negotiation. The Court grants attorneys' fees as requested.[2]

### 2. Costs & Expenses

Next, Plaintiffs ask the Court to approve an award of $36,833.99 in costs and expenses. (Fee Mot. 15–16.) As with the attorneys' fees, this is an amount Anthem agreed to pay as part of the settlement.

---

[2] The Court makes this finding without making any explicit finding regarding the reasonableness of any of the requested hourly rates. Rule 23 does not state that courts approving class action settlements must make reasonableness findings on attorney fee awards in all cases; instead, it states specifically that the court may approve a binding proposal "only after . . . finding that it is fair, reasonable, and adequate after considering whether . . . the relief provided for the class is adequate, taking into account . . . the terms of any proposed award of attorneys' fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). In other words, the Court need <u>not</u> concern itself with the reasonableness of the dollar amount of an attorney fee award when the amount of the award would have no effect on the relief for the class. That is the case here. Thus, the Court approves the attorney fee award as the product of the parties' agreement and based on the fact that fees are not coming from a common fund. These facts, rather than any of the lodestar figures, are what make the attorney fee request reasonable.

Plaintiffs' attorneys declare that the costs actually incurred in this case total $45,329.45. (Decl. Joshua Davis ("Davis Decl.") ¶ 29, ECF No. 111-1; Decl. Conal Doyle ("Doyle Decl.") ¶ 14, ECF No. 111-2.) Plaintiffs' attorneys explain in general terms the various categories of costs and expenses they incurred over the course of this suit, but they do not submit detailed cost and expense records. (Davis Decl. ¶¶ 29–31; Doyle Decl. ¶ 14.) Nevertheless, given that Anthem has agreed to costs and expenses in this amount and that these amounts will not diminish any common fund, costs and expenses in this matter should be treated the same way as attorneys' fees. *See* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award . . . nontaxable costs that are authorized by . . . the parties' agreement."). The parties have agreed to the claimed costs, and given the scope and length of the lawsuit, nothing about the claimed costs is patently unreasonable. The Court grants costs as requested.

### 3. Incentive Payments

Finally, Atzin and Andersen request an incentive payment of $15,000 each. "Incentive awards typically range from $2,000 to $10,000," and "[h]igher awards are sometimes given in cases involving much larger settlement amounts." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). However, "[g]enerally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." *Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) (citing *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)). Furthermore, when there is a "significant disparity" between the incentive award and the average class member recovery, the incentive award is unreasonable unless sufficiently justified. *See Aguirre v. DirecTV, LLC*, No. CV 16-06836 SJO (JPRx), 2017 WL 6888493, at *13 (C.D. Cal. Oct. 6, 2017) (finding plaintiff provided inadequate justifications for an incentive award of $10,000 when the average recovery was $1,350).

In this case, an incentive payment of $10,000 to each of the two named Plaintiffs is appropriate. While higher than the average incentive award in the Ninth Circuit,

11

$10,000 is within the range of typical. *Bellinghausen*, 306 F.R.D. at 267. Moreover, the relief Atzin and Andersen are receiving in this case is the exact same relief every other class member is receiving: the opportunity to get a previously denied claim reprocessed. There is a possibility that, even after five-plus years of litigation and much work with their attorneys to see this matter to its conclusion, Atzin and Andersen will resubmit their claims only to see Anthem again deny those claims for some different reason. A $10,000 incentive payment would function as a partial cushion against the expense of the prosthesis in case Anthem denies Atzin's and Andersen's claims a second time. Additionally, as with attorneys' fees, the incentive payments are not coming out of any sort of class fund. All class members receive the exact same opportunity to get their claims reprocessed, regardless of how big an incentive award Anthem might pay Atzin and Andersen. The Court therefore awards incentive payments of $10,000 each to Atzin and Andersen.

## IV.   CONCLUSION

In summary, the Court **APPROVES** the settlement. First, the Court **CONDITIONALLY GRANTS** the Motion for Final Approval and approves of the key relief, an injunction directing Anthem to reprocess the claims of the class under the new agreed-upon medical necessity criteria, with the grant **conditioned on** the parties providing one more round of post-approval notice to the class as detailed below. (ECF No. 113.) The Court makes the following findings in connection with settlement approval:

- The settlement is fair, reasonable, and adequate, and is the result of arm's-length negotiation by the parties.
- The class and subclasses as defined in the Settlement Agreement are certified for settlement purposes.
- Class counsel provided pre-approval notice to class members ("Notice") in accordance with the Court's Preliminary Approval Order. The Notice (1) constituted the best practicable notice under the circumstances; (2) was

reasonably calculated to apprise class members of the pendency of the litigation, their right to object to or exclude themselves from the proposed Settlement, and their right to appear at the final approval hearing; and (3) met the applicable requirements of the Federal Rules of Civil Procedure and constitutional due process.

- Class counsel and Plaintiffs adequately represented the class for purposes of entering into and implementing the Settlement.
- The release of claims set forth in paragraphs 13(q) and 23–24 of the Settlement Agreement is effective as of the date of this Final Order and forever discharges the Released Parties from any claims or liabilities arising from or related to the Released Claims.
- Without affecting the finality of this Order for purposes of appeal, the Court shall retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the settlement and this Order.
- The Parties submit to the jurisdiction of the Court for purposes of administration, construction, consummation, enforcement, and interpretation of the Settlement.

Within <u>forty-five (45) days</u> of the date of this Order, the parties shall file a declaration confirming that the class has been provided with post-approval notice as discussed herein and at the final approval hearing. Moreover, by the same date, the parties shall file a Proposed Judgment that omits detailed findings. See Fed. R. Civ. P. 54(a), 58(a). Upon receipt of these documents, the final approval motion shall, with no further notice or order from the Court, be deemed fully granted as provided herein, and the Court will issue a judgment of dismissal.

///
///
///
///
///

Moreover, The Court substantially **GRANTS** the Motion for Attorneys' Fees, Costs, and Incentive Awards. (ECF No. 111.) Specifically, the Court **AWARDS**:

- attorneys' fees in the amount of $850,000;
- costs in the amount of $36,833.99; and
- incentive payments in the amount of $10,000 for each of the two named Plaintiffs.

**IT IS SO ORDERED.**

September 14, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**